**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GEORGE F. TROMBETTI, DESAREE R. ICZKOWSKI** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 25-1362** |
| | : | |
| **ALDAN BOROUGH,** *et al.* | | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                              **June 9, 2025**

A former homeowner and his fiancée pro se claim a wide variety of state actors, estranged family members, and others conspired to retaliate against them for challenging what they perceive to be fraud in Florida organ donation procedures causing state actors in Delaware County to not respond to their needs and a Delaware County tax bureau to foreclose on their home in September 2024. The former homeowner and his fiancée do not plead specific facts demonstrating concert of action. Our federal courts offer aggrieved persons a due process opportunity to seek redress based on well-pleaded facts allowing us to plausibly infer a claim within our limited jurisdiction. We allowed the former homeowner and his fiancée to proceed without paying filing fees and must now screen their allegations (as well as supplemental allegations) before approving summons. We studied their Complaint and supplemental facts mindful we attempt to liberally construe filings from persons proceeding without lawyers. But we cannot discern a single claim against the state actors, family members, and private businesspersons arising from the donation of the homeowner's mother's organs upon her passing in Florida in 2021, police conduct in Delaware County, and a September 2024 foreclosure on Mr. Trombetti's former home by local tax authorities. We dismiss their Complaint without prejudice to timely filing an amended complaint consistent with Federal Rules 8 and 11 including being grounded in a good faith presentation of facts.

## I.     Alleged pro se facts

Delaware County citizen George Trombetti's mother Eileen Ann Burger lived in Ocala, Florida.[1] An unpleaded individual admitted Ms. Burger to AdventHealth Ocala Hospital in a comatose state on June 8, 2021.[2] Ms. Burger remained in a medically diagnosed coma during her three days of hospitalization.[3] James Burger—Mr. Trombetti's uncle who was a municipal government official—assumed control of Ms. Burger's medical decisions and then told Florida hospital officials he did not know where to find Mr. Trombetti.[4] Uncle Burger, along with Mr. Trombetti's aunt Therese Smith and her husband David Smith—concealed Ms. Burger's hospitalization from Mr. Trombetti while making her medical decisions during her incapacitation.[5] These relatives attempted to seize control of Ms. Burger's real estate and financial accounts, delay probate proceedings, and forge property ownership documents in an unpleaded way.[6]

Notwithstanding Uncle Burger's nondisclosure, Mr. Trombetti discovered his mother's hospitalization and attempted to intervene but the hospital told him they had placed her in targeted hypothermia.[7] Mr. Trombetti, at an unpleaded time, contracted with LifeQuest Organ Recovery Services—a federally regulated organ procurement organization overseen by the Organ Procurement and Transplantation Network and Department of Health and Human Services—through its representative William Peoples to be Ms. Burger's next-of-kin and legal decision-maker in evaluating her organ donation eligibility.[8]

### *Reporting his mother's Florida hospitalization to Delaware County authorities.*

Mr. Trombetti and his fiancée Ms. Iczkowski reported medical fraud, asset exploitation, and deprivation of their legal rights to his local township Aldan Police and Delaware County District Attorney's Office during his mother's hospitalization.[9] Aldan Police and Delaware County District Attorney's Office refused to investigate these allegations relating to a Florida hospitalization of a Florida citizen.[10]

### *Ms. Burger dies three days later and*
### *LifeQuest donates her liver to a person not approved by Mr. Trombetti.*

LifeQuest Representative Peoples proclaimed Ms. Burger deceased on June 11, 2021.[11] Ms. Burger's physician Dr. Behrouz Ferdosian told Mr. Trombetti of a pre-selected liver recipient.[12] LifeQuest Representative Peoples donated Ms. Burger's liver to a doctor's spouse at AdventHealth Ocala—LifeQuest Representative Peoples's former colleague.[13] LifeQuest apparently chose a person as an organ done not approved by Mr. Trombetti.

### *Mr. Trombetti reports organ donation fraud to Florida authorities in 2022.*

Mr. Trombetti and fiancée Iczkowski found Ms. Burger's Medicare documents sometime in early 2022 and contacted the Florida Department of Health's Division of Medical Quality Assurance for unpleaded offenses presumably related to the organ donation after Ms. Burger passed.[14] Florida Department of Health Special Agent and Medical Malpractice Investigator Robert Tanner then led a Governor-sanctioned investigation.[15]

Mr. Trombetti reported systematic fraud in organ procurement organizations between March and April 2022.[16] Organ Procurement and Transplantation Network General Counsel John Livingston in April or June 2022 suggested federal agencies were investigating related matters.[17] Mr. Trombetti served as a government witness at an unpleaded place and time "in Florida's prosecution of a federally contracted organ procurement official, which led to severe retaliation upon his return to Pennsylvania."[18]

### *Concerns with local law enforcement after Ms. Berger's passing.*

Mr. Trombetti and fiancée Iczkowski had numerous contacts with Delaware County authorities after his mother's passing, including:

- Delaware County Criminal Investigation Division crime scene investigators Detective Lithgoe, Detective Tyler, and Investigator Rosen declined to review unpleaded Florida

Department of Health documents related to Ms. Burger shortly after her passing.[19] Detective Tyler directed Mr. Trombetti and fiancée Iczkowski to report such documents to Aldan Police.[20]

- Aunt Therese Smith spoke with Aldan Police Chief Steven Ziviello about Mr. Trombetti a couple weeks after Ms. Berger's passing.[21] Fiancée Iczkowski texted prosecutorial review documents to Aunt Therese Smith on April 26, 2022.[22]

- An unknown individual threw a brick or rock through Mr. Trombetti's window five months later on March 18, 2023.[23] Aldan Police Officer Ryan Bell and Clifton Police Officer Smith arrived at Mr. Trombetti's residence, where Mr. Trombetti prevented Officer Bell and Smith from entering by holding the door shut.[24] As fiancée Iczkowski moved to assist Mr. Trombetti, Officer Bell threatened to taze her service dog and arrest her.[25] Officer Bell then arrested Mr. Trombetti.[26] Officer Bell told fiancée Iczkowski to "shut the f[xx]k up" when she inquired as to Mr. Trombetti's arrest.[27] She later received a citation in the mail related to the incident.[28]

- An unknown municipal worker accused Mr. Trombetti of property damage in May or June 2023.[29] Aldan Police Officer Hollabaugh threatened to arrest Mr. Trombetti unless he produced video evidence exonerating him.[30]

- Mr. Trombetti encountered Officer Andrew Duris during an unpleaded incident on July 6, 2023.[31]

- Ryan Meikle broke down Mr. Trombetti's door and entered his home on July 19, 2023.[32] Broken wood and metal debris from the door struck Mr. Trombetti and fiancée Iczkowski.[33] Mr. Meikle's mother-and-law's dog bit fiancée Iczkowski as she fled the property.[34] Officer Hollabaugh responded but did not take reports from either Mr. Trombetti or fiancée Iczkowski, nor did he take further police action.[35]

4

- Uncle David Smith threatened to assault Mr. Trombetti and fiancée Iczkowski with a baseball bat on October 28, 2023, claiming Aldan Borough Manager John White authorized the attack.[36] Aldan Police Officer Pollack refused to explain to Mr. Trombetti the next day why police did not arrest Uncle David Smith for threatening to assault him with a baseball bat.[37] Officer Pollack deferred to her superior, Officer Zahner, who told Mr. Trombetti Officer Pollack did not arrest Uncle David Smith due to an unpleaded earlier communication referencing unpleaded Department of Health documents.[38]

- Mr. Trombetti attempted to report an unpleaded crime on February 25, 2024 on behalf of fiancée Iczkowski but Officer Hollabaugh refused to investigate unless fiancée Iczkowski could demonstrate injury.[39] Officer Jackson two days later refused evidence after Mr. Trombetti attempted to submit documents.[40]

- Aldan Borough worker John Gould harassed Mr. Trombetti on March 12, 2024 over an unpleaded "Raymor & Flanigan truck incident."[41] Officer Coppola Jr. and Jackson refused evidence from Mr. Trombetti several hours later.[42]

- Officer Zahner arrested Mr. Trombetti in April 2024 for an unpleaded reason.[43]

- Also in April 2024, Mr. Trombetti confronted Officer Hollabaugh about Mr. Meikle's trespassing into his home.[44]

- Officer Duris and an Officer Hillavah approached Mr. Trombetti near his property line on February 7, 2025 after an unpleaded individual reported him walking down the street.[45] Both officers acknowledged Mr. Trombetti committed no crime.[46] Officer Duris stated he would revise an earlier incident report to include Mr. Burger and an unpleaded Terry Smith.[47] Officer Duris and Hillavah then instructed Mr. Trombetti to contact the Delaware County District Attorney's Office for an unpleaded reason.[48]

- The same day, Mr. Trombetti again asked Officer Hollabaugh why he had not charged Mr. Meikle in connection with the July 2023 breaking-and-entering incident.[49] He also explained fiancée Iczkowski faced communication barriers due to a hearing disability.[50] Officer Hollabaugh responded fiancée Iczkowski knew how to write.[51]

- An unidentified individual alleged Borough Manager White directed municipal employees to fabricate reports, make false allegations, and intimidate Mr. Trombetti and fiancée Iczkowski at an unpleaded time.[52]

### *Family members do not support Mr. Trombetti's theories.*

Fiancée Iczkowski asked Aunt Therese Smith on July 4, 2022 why she would not intervene regarding Ms. Burger's death.[53] Aunt Therese Smith did not believe the claims.[54]

Uncle James Burger attempted to call fiancée Iczkowski on October 7, 2022.[55] When fiancée Iczkowski returned the call, Uncle James Burger did not answer. Mr. Trombetti called Uncle David Smith five days later to ask why Uncle James Burger contacted his fiancée.[56]

Aunt Therese Smith and Uncle David Smith brought unpleaded harassment charges against Mr. Trombetti.[57] The trial occurred in November 2023.[58]

### *Defaults in paying taxes lead to interest from real estate agents and eventually a real estate tax authority foreclosed on Mr. Trombetti's residence in September 2024.*

Mr. Trombetti became delinquent on his real estate tax payments or other municipal obligations relating to his home in Aldan, Pennsylvania. Nathan Krauthamer, an associate of Coldwell Banker real estate broker David Clark, contacted Mr. Trombetti as a prospective buyer, urging him to sell his home at a loss.[59] Nathan Goode, a private intelligence contractor, also worked at Coldwell Banker.[60] Associate Krauthamer contacted the Delaware County Tax Claim Bureau to purchase Mr. Trombetti's home.[61] Multiple deals to purchase Mr. Trombetti's home.[62]

Mr. Trombetti, facing financial distress, contacted the Delaware County Tax Bureau on August 13, 2024, explaining his circumstances and efforts to pay taxes.[63] An unpleaded Bureau representative advised Mr. Trombetti to pay the balance by an unpleaded date in September 2024 or risk foreclosure.[64] Mr. Trombetti reviewed the Bureau's foreclosure regulations, determining homeowners had until 4:30 PM on the foreclosure date to redeem their property.[65]

The Bureau did not provide Mr. Trombetti with a thirty-day foreclosure notice or allow him to cure his deficiencies.[66] The foreclosure proceeded to auction. The Bureau pre-selected Coldwell Banker Broker Clark to purchase Mr. Trombetti's home before the auction.[67] Coldwell Banker Broker Clark purchased Mr. Trombetti's property for $80,000 at the auction on September 19, 2024 at 10:33 AM, relying on "approximate exposure time" instead of recorded sale date.[68] Mr. Trombetti filed for bankruptcy after the sale at 3:03 PM.[69] Bureau Manager Duffy and the Bureau refused to recognize Mr. Trombetti's redemption attempts, citing the auction's earlier timing and an issue with Mr. Trombetti's credit counseling.[70]

## II.    Analysis

Mr. Trombetti and his fiancée Iczkowski now come to this Court alleging unrelated facts followed by a series of conclusions. They sue over twenty persons including Mr. Trombetti's family members and persons and entities from Delaware County with often vague connections to the foreclosure of his home in September 2024. They invoke our limited subject matter jurisdiction claiming one or more persons violated constitutional and civil rights; the National Defense Authorization Act; the Americans with Disabilities Act; the Rehabilitation Act; and a variety of federal criminal statutes under which they lack standing.[71] They also sue under Pennsylvania law for obstruction of justice, criminal conspiracy, fraudulent foreclosure, perjury, assault, harassment, "wrongful eviction and financial devastation," "suppression of evidence," "targeted property seizure," "real estate and tax foreclosure fraud," "wrongful death and organ procurement fraud,"

"civil conspiracy to commit fraud," and "elder financial exploitation."[72] Mr. Trombetti and fiancée Iczkowski seek compensatory and punitive damages and injunctive relief in the form of a permanent injunction against the above entities and individuals.[73]

Congress requires we screen their case now proceeding without paying filing fees before issuing summons.[74] We today screen Mr. Trombetti and fiancée Iczkowski's extended Complaint. We must dismiss before issuing summons if we find Mr. Trombetti and fiancée Iczkowski's claims are frivolous or malicious, they do not state a claim on which relief may be granted, or they seek monetary relief against immune persons.[75] We apply the same standard under Federal Rule of Civil Procedure 12(b)(6) when considering whether to dismiss a complaint under section 1915(e)(2)(B)(ii).[76] Mr. Trombetti and fiancée Iczkowski meet the standard if they plead a "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[77] We accept as true all well-pleaded factual allegations by Mr. Trombetti and fiancée Iczkowski, draw all reasonable inferences in their favor, and construe their allegations in the light most favorable to them to determine whether they plausibly state a claim for relief.[78]

We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a pro se litigant's pleadings."[79] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[80] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[81]

Mr. Trombetti and fiancée Iczkowski's claims do not meet Rule 8. We dismiss Mr. Trombetti and fiancée Iczkowski's federal claims without prejudice to them amending to plead violations of their constitutional and civil rights; the National Defense Authorization Act; the Americans with Disabilities Act; and the Rehabilitation Act. We dismiss their claims referring to

federal criminal statutes with prejudice. We decline to exercise supplemental jurisdiction over their state law claims absent a federal question.

### A.  We dismiss the federal claims without prejudice under Rule 8.

Mr. Trombetti and fiancée Iczkowski do not plead facts in a coherent manner allowing us to evaluate the merits of their federal claims. The Supreme Court requires, under Federal Rule of Civil Procedure 8: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing the pleader is entitled to relief; and (3) a demand for the relief sought. Dismissal under Rule 8 is proper when a complaint "left the defendant[] having to guess what of the many things discussed constituted [a cause of action]" or when the complaint is so rambling and unclear to defy response.[82]

Mr. Trombetti and fiancée Iczkowski's rambling unclear allegations leave us guessing as to a federal question. They redundantly repeat allegations of whistleblower retaliation (based on challenges to the Florida organ donation) and Delaware County's tax foreclosure under state law over fifty pages. The narrative is unclear and difficult to follow, containing details about organ procurement fraud, intelligence contractors, and community foundations. Multiple "WHEREFORE" clauses request different forms of relief, rather than presenting a single, clear statement. And Mr. Trombetti and fiancée Iczkowski group allegedly culpable persons together without explaining each individual's role in the alleged wrongdoing.

Mr. Trombetti does not allege how he qualifies as a protected whistleblower or what specific protected activity led to retaliation. Mr. Trombetti and fiancée Iczkowski's discrimination claims lack specifics on denial of or requests for reasonable accommodations. Mr. Trombetti and fiancée Iczkowski do not identify which entities or individuals are responsible for each cause of action. Their conspiracy claims lack specific facts regarding agreements or concerted action to commit overt acts between entities or individuals. The multi-state connection between the organ

procurement fraud allegations in Florida and the local tax foreclosure is not pleaded with facts beyond conclusory charges. Mr. Trombetti characterizes an unpleaded individual Terry Smith as a "critical figure" in their extended Complaint. But they do not identify Terry Smith as a party or plead facts describing his involvement, undermining "critical figure" status.

Mr. Trombetti and fiancée Iczkowski offer no coherent fact narrative describing a chronology of the events. They do not plead "a short and plain statement of the claim showing . . . entitle[ment] to relief" in a "simple, concise, and direct" manner.[83]

By way of example:

- Mr. Trombetti and fiancée Iczkowski allege Coldwell Banker real estate agent Billy Plymouth stalled transactions involving Mr. Trombetti's property.[84] But they do not assert a claim against Billy Plymouth. Naming an individual in the Caption without alleging any claims against them is insufficient to state a claim under Rule 8[85];

- Mr. Trombetti and fiancée Iczkowski allege a privately contracted law firm of Lithgoe, Tyler, & Rosen refused to accept certain documents, frustrating their ability to obtain relief.[86] We cannot qualify this entity as a party because it does not appear to exist. Their allegations do not satisfy Rule 8's notice pleading requirement without sufficient clarity or identification of a person capable of responding[87];

- They also plead Detective Lithgoe, Detective Tyler, and Investigator Rosen—acting as agents of the Delaware County Criminal Investigation Division—refused to process or receive medical homicide evidence, suppressed homicide reports, reframed their complaints as mental health issues, and coordinated with law enforcement to harass and falsely arrest Mr. Trombetti.[88] But Mr. Trombetti and fiancée Iczkowski do not describe specific actions the detectives or investigator took to suppress evidence or reframe complaints, or explain how they

coordinated with law enforcement. Mr. Trombetti and fiancée Iczkowski offer conclusory assertions these individuals violated their civil rights without identifying which rights were violated. This does not meet Rule 8's pleading standard.

- • Mr. Trombetti and fiancée Iczkowski also identify Clifton Police Officer Smith as a "civil RICO defendant" who perjured himself, suppressed unpleaded investigations, and collaborated with unpleaded retaliatory actors.[89] But they do not plead a racketeering claim or allege facts supporting the elements of such a claim. This does not meet Rule 8's pleading standard.

We grant Mr. Trombetti and fiancée Iczkowski leave to timely plead facts as to each person they wish to sue. These facts must be true to the best of their knowledge. We do not consider conclusions.

### B. We decline to exercise supplemental jurisdiction over Mr. Trombetti and fiancée Iczkowski's remaining claims.

Mr. Trombetti and fiancée Iczkowski do not plead facts allowing us to plausibly infer a federal claim. Mr. Trombetti and fiancée Iczkowski also allege a variety of Pennsylvania state law claims, but considering our dismissal of their federal claims, we lack subject matter jurisdiction over their state law claims unless we exercise our discretion to retain supplemental jurisdiction.

We may consider our supplemental jurisdiction sua sponte.[90] Congress allows us to exercise supplemental jurisdiction over state law claims where the state law claims "form part of the same case or controversy under Article III[.]"[91] But Congress empowers us to decline exercising supplemental jurisdiction over state law claims if we dismissed "all claims over which [we] ha[ve] original jurisdiction."[92] We decline to exercise supplemental jurisdiction absent a federal question and dismiss Mr. Trombetti and fiancée Iczkowski's state law claims without prejudice.

### III.    Conclusion

Mr. Trombetti and fiancée Iczkowski allege entities and individuals violated numerous constitutional and statutory rights, including conspiracy, retaliation, and discrimination against fiancée Iczkowski based on her disability. They assert these far-fetched actions culminated in the foreclosure of Mr. Trombetti's home. They seek compensatory and punitive damages and injunctive relief. But their pleadings do not provide sufficient factual detail to state a claim under federal law. We decline to exercise supplemental jurisdiction over the state law claims at this early stage absent a federal question. We dismiss their federal and state claims with leave to timely amend.

---

[1] ECF 16 at 8.

[2] *Id.* at 8, 27, 40. Mr. Trombetti and Ms. Iczkowski sought to supplement their Complaint in multiple filings. ECFs 1, 16, 22. We granted those requests and consider all such filings part of the operative Complaint. We also repeatedly granted them leave to amend their original Complaint at their request, but they never amended. ECFs 26, 31, 33.

[3] ECF 16 at 8, 27.

[4] *Id.* at 28–29, 40; George Trombetti purchased 129 Shisler Avenue in Aldan, Pennsylvania in December 2019 after living there for over two decades. Fiancée Desiree Iczkowski moved into Mr. Trombetti's residence with her registered service dog in early January 2020. *Id.* at 8, 38.

[5] *Id.* at 24, 40. Aunt Therese Smith and Uncle David Smith are residents of Aldan, Pennsylvania. *Id.* at 28.

[6] *Id.* at 24–29.

[7] *Id.* at 40.

[8] *Id.* at 15. Mr. Peoples is a federally contracted nurse and clinical coordinator licensed in Florida with LifeQuest Organ Recovery Services. *Id.* at 9.

[9] *Id.* at 40–41.

[10] *Id.*; ECF 22 at 3.

[11] ECF 16 at 18.

[12] *Id.* at 15.

[13] *Id.*

[14] *Id.* at 9, 16.

[15] *Id.* at 16–18.

[16] *Id.* at 17.

[17] *Id.*

[18] *Id.* at 10.

[19] ECF 22 at 3–4.

[20] *Id.* at 5.

[21] ECF 16 at 32.

[22] *Id.*

[23] *Id.* at 18, 38; ECF 22 at 7.

[24] ECF 16 at 38.

[25] *Id.*

[26] *Id.* at 18, 38.

[27] *Id.* at 38.

[28] *Id.*

[29] ECF 16 at 39.

[30] *Id.*

[31] *Id.* at 33.

[32] *Id.* at 18, 23, 33, 39.

[33] *Id.* at 33; ECF 22 at 7–8.

[34] ECF 22 at 7.

[35] ECF 16 at 18, 33, 39.

[36] *Id.* at 33, 42.

[37] *Id.* at 33.

[38] *Id.* at 34.

[39] *Id.* at 39.

[40] *Id.* at 34.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] ECF 22 at 7–8.

[45] *Id.* at 6.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] ECF 22 at 8.

[50] *Id.*

[51] *Id.*

[52] ECF 16 at 39.

[53] *Id.* at 32–33.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 33.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 19; ECF 22 at 2. Mr. Trombetti and fiancée Iczkowski acknowledge real estate Associate Krauthamer is private individual and not a government employee. *See id.* at 1.

[60] ECF 16 at 18.

[61] ECF 22 at 2.

[62] ECF 16 at 42–43.

[63] *Id.* at 20.

[64] *Id.*

[65] *Id.* at 20, 39.

[66] *Id.* at 20.

[67] *Id.*

[68] *Id.* at 19, 20, 39.

[69] *Id.* at 20, 39.

[70] *Id.* at 39.

[71] Mr. Trombetti and fiancée Iczkowski also cite various federal criminal statutes: 18 U.S.C. § 249 under the Hate Crimes Prevention Act; wire fraud under 18 U.S.C. § 1343; bank fraud under 18 U.S.C. § 1344; injury to a protected person under 18 U.S.C. § 245; and obstruction of justice and witness intimidation claims under 18 U.S.C. § 1512 and § 1513. ECF 16.

But criminal statutes do not give rise to a basis for civil liability. We dismiss claims under these statutes as frivolous. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]").

Section 249 does not create a private right of action. *See Wright v. State Farm Ins. Co./State Farm Mutual Automobile Ins. Co.*, No. 18-681, 2018 WL 1508758, at *2 (E.D. Pa. Mar. 27, 2018) (quoting *Wolfe v. Beard*, No. 10-2566, 2011 WL 601632, at *2 (E.D. Pa. Feb. 15, 2011) ("[T]here is no private right of action under 18 U.S.C. § 249.")).

Sections 1343 and 1344 do not create a private right of action. *See Ojo v. Charles*, No. 23-22808, 2024 WL 5165236, at *6 (D.N.J. Dec. 19, 2024) (citing *Obianyo v. Tennessee*, 518 F. App'x 71,

72 (3d Cir. 2013) ("criminal statutes such as 18 U.S.C. § 1343, which criminalizes wire fraud ... provide no private right of action")); *Brown v. Demchak*, No. 21-1185, 2021 WL 4552964, at *3 (W.D. Pa. Oct. 5, 2021) (dismissing section 1344 as frivolous and meritless because no private right of action).

Section 245 does not create a private right of action. *See Barr v. Camelot Forest Conservation Ass'n., Inc.*, 153 F. App'x 860, 861–62 (3d Cir. 2005) (affirming district court's holding section 245 has no civil remedy).

Section 1512 and 1513 do not create a private right of action. *See Shahin v. Darling*, 606 F. Supp.2d 525, 538–39 (D. Del.), *aff'd*, 350 F. App'x 605 (3d Cir. 2009) (recognizing no private right of action under 18 U.S.C. §§ 1512, 1513).

[72] ECF 16.

[73] *Id.* at 45–46. We granted Mr. Trombetti and fiancée Iczkowski's multiple requests for more time to file an amended Complaint including up to June 3, 2025. They did not take advantage of our leave. We study the Complaint and supplements. But we are also aware Mr. Trombetti and fiancée Iczkowski belatedly moved to file an untimely complaint after we twice extended their deadlines. ECF 34. We today deny their motion for untimely relief but, in the interests of justice, grant them leave to <u>timely</u> file an amended Complaint informed by this Memorandum and then subject to further screening before proceeding consistent with Congress' mandate in section 1915.

[74] 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

[75] *Id.*

[76] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019).

[77] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[78] *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)) (cleaned up).

[79] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)) (cleaned up). Fiancée Iczkowski filed a "Supplemental Emergency Declaration/Affidavit" on April 14, 2025. *See* ECF 23. But we only construe a pro se litigant's *pleadings* and not an affidavit.

[80] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[81] *Id.* (quoting *Mala*, 704 F.3d at 245).

[82] *Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011); *Tillio v. Spiess*, 441 F. App'x 109, 110 (3d Cir. 2011).

[83] Fed. R. Civ. P. 8.

[84] ECF 16 at 43.

[85] *Hudson v. McKeesport Police Chief*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming dismissal of defendant only named in caption).

[86] ECF 22 at 3.

[87] *See Covert v. Dept. of Cnty./State Med.*, No. 18-550, 2018 WL 1609290, at *6 (E.D. Pa. Apr. 3, 2018) (dismissing unidentifiable defendants under Rule 8).

[88] ECF 22 at 4–5.

[89] *Id.* at 7.

[90] *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).

[91] 28 U.S.C. § 1367(a).

[92] *Id.* § 1367(c)(3); *cf. Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) (we must remand state law claims before us under section 1367 supplemental jurisdiction based on federal question where all federal claims have been dismissed from the case).